1  JOSEF D. COOPER (Cal. S. B. 53015)
   TRACY R. KIRKHAM (Cal. S. B. 69913)
2  KELLY A. HORNE (Cal. S. B. 242675)
   COOPER & KIRKHAM, P.C.
3  655 Montgomery Street, 17th Floor
   San Francisco, CA 94111
4  Telephone:  (415) 788-3030
   Facsimile:  (415) 882-7040
5  jdc@coopkirk.com

6  Indirect Plaintiffs' Co-Lead Counsel

7

8

EDMUND G. BROWN, JR.
Attorney General of the State of California
THOMAS GREENE
Chief Assistant Attorney General
KATHLEEN FOOTE (Cal. S. B. 65819)
Senior Assistant Attorney General
EMILIO E. VARANINI (Cal. S. B. 163952)
Deputy Attorney General
455 Golden Gate Avenue, Ste. 11000
San Francisco, CA 94102
Telephone:  (415) 703-5908
Facsimile:  (415) 703-5480
Emilio.varanini@doj.ca.gov

9  Attorneys for the State of California

10  (Names of Additional Counsel Appear on Signature Page)

11

12  **UNITED STATES DISTRICT COURT**

13  **NORTHERN DISTRICT OF CALIFORNIA**
    **SAN FRANCISCO DIVISION**

14

15  In re DYNAMIC RANDOM ACCESS
    MEMORY (DRAM) ANTITRUST
16  LITIGATION

17  This Document Relates To:

18  ALL INDIRECT PURCHASER ACTIONS

19

20

21  State of New York v. Micron Technology et al

22  State of California et al v. Infineon
           Technologies AG et al
23

24  State of California et al v. Samsung
           Electronics Co., Ltd et al
25

26  State of California et al v. Winbond
           Electronics Co.
27

28

Master File No.  M-02-1486-PJH

MDL No. 1486

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENTS WITH SAMSUNG
AND WINBOND DEFENDANTS**

No. C-06-6436 PJH

No. C-06-4333 PJH

No. C-07-1347 PJH

No. C-07-2589 PJH

Date:  November 14, 2007
Time:  9:00 a.m.
Place:  Courtroom 3, 17th Floor
           Honorable Phyllis J. Hamilton

## I.    INTRODUCTION

Settling Plaintiffs, comprised of the Private Indirect Purchaser Class Plaintiffs in MDL 1486 and the Plaintiff States[1] (collectively, the "Settling Plaintiffs"), respectfully submit this Memorandum in Support of their Motion for Preliminary Approval of Settlements with defendants Samsung Semiconductor, Inc. and Samsung Electronics Company Ltd. (collectively "Samsung"), attached as Exhibit A, and with defendants Winbond Electronics Corporation and Winbond Electronics Corporation America (collectively "Winbond"), attached as Exhibit B.

The proposed settlements resolve all claims brought by the Settling Plaintiffs against Samsung and Winbond (collectively "Settling Defendants").[2] With the approval of this Court, the proposed settlements together provide for cash payments of $92,000,000, substantial cooperation and ongoing injunctive relief, plus additional payments of notice costs and attorneys' fees. These settlements were achieved after extensive arms-length negotiations. In the judgment of counsel for the Private Indirect Purchaser Class Plaintiffs, as well as forty-seven (47) Attorneys General charged with the protection of their citizens, their States, and the public trust, the substantial recoveries obtained by the proposed settlements constitute eminently fair, reasonable and adequate compensation to the Settling Plaintiffs and members of the proposed settlement classes.

---

[1]  The Plaintiff States are Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Idaho, Illinois, Iowa, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Northern Mariana Islands, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin. Although the State of New York has a separate action, and has only joined the settlement with Samsung, the State of New York will also be referred to by the collective term "Plaintiff States" for ease of reference except where otherwise indicated.

[2]  The complaint filed against Samsung in Case No. C 07-1347 PJH contains the same facts and claims as that filed by Plaintiff States against non-settling defendants in *State of California et. al. v. Infineon Technologies et. al.,* Case No. C 06-4333 PJH, save that additional States joined the Samsung Complaint for purposes of settlement. The States' *Winbond* Complaint, Case No. C-07-2589-PJH, contains different allegations pertaining to alleged conspiratorial activities by Winbond in Singapore. The Winbond Settlement will resolve the claims in the Plaintiff States' Winbond Complaint and the claims that Plaintiff States could have asserted in that Complaint, and the claims asserted by Indirect Purchaser Class Plaintiffs in their complaints against Winbond.

1  The payment of funds in the Settlement Agreement with Samsung is divided between private

2  and governmental indirect purchasers, with $80 million going to the private purchasers and $10

3  million going to the governmental purchasers.  The $2 million dollar cash payment from Winbond is

4  not allocated in the Settlement Agreement; however, the Settling Plaintiffs recommend that the net

5  Winbond Settlement funds should be divided in the same proportion as provided in the Samsung

6  Settlement Agreement

7  Both Settlement Agreements are contingent upon the certification by this Court of two

8  settlement classes, as defined below, and Settling Plaintiffs hereby seek provisional certification of

9  these classes.  The first settlement class is a nationwide class of non-governmental indirect

10  purchasers of DRAM[3] and products containing DRAM ("the Private Indirect Purchaser Settlement

11  Class").  This proposed settlement class includes indirect purchasers on whose behalf certain

12  Plaintiff States are asserting claims in their *parens patriae* capacity.  Plaintiff States have brought

13  *parens patriae* claims on behalf of their indirect purchasers, as well as direct proprietary claims on

14  behalf of the States, state agencies and local government entities that are purchasers of DRAM and

15  products containing it.  The Settlements also resolve these claims.  Settling Plaintiffs recommend

16  that the firms designated as Lead Counsel for the Private Indirect Purchaser Class Plaintiffs be

17  appointed to represent the Settlement Class, and that said counsel continue to coordinate with the

18  State Attorneys General acting in their *parens patriae* capacity on behalf of private indirect

19  purchasers in their respective States.

20

21  The second settlement class is a class of Governmental Purchasers in seven Plaintiff States,

22  comprised of direct and indirect governmental purchasers with proprietary claims, to the extent that

23  said government purchasers are not being represented by Plaintiff States in a direct or *parens*

24

25  _____

26  [3]  For purposes of settlement, the term "DRAM" is defined as including dynamic random access
memory devices and components ("DRAM"), including without limitation, synchronous dynamic
random access memory ("SDRAM"), Rambus dynamic random access memory ("RDRAM"),

27  asynchronous dynamic random access memory ("ASYNC"), and double-data rate dynamic random
access memory ("DDR"), including modules containing DRAM, RDRAM, ASYNC, and/or DDR,

28  but specifically excluding static random access memory or SRAM.  Exh. A at ¶ 4; Exh. B at ¶
II(B).

1  capacity ("the Governmental Purchaser Settlement Class").  See Exh. C, which is a chart listing each

2  state's claims by type.  Settling Plaintiffs recommend that the Attorneys General for the States with

3  governmental entities in the Settlement Class be appointed to represent the class.  This class and the

4  states included in it are defined in paragraphs 98-99 of Plaintiff States' Complaint.

5          Counsel often submit a proposed form of class notice and a plan for distribution of the notice

6  as part of a motion for preliminary approval of a settlement.  However, Settling Plaintiffs believe

7  that the notices to be sent to the settlement classes should include a meaningful description of the

8  proposed plan of distribution of the settlement funds so that class members can assess the plan as

9  part of their evaluation of whether to remain in the litigation.  Accordingly, assuming that

10  preliminary approval is granted, Settling Plaintiffs request the Court to appoint a Special Master

11  pursuant to Federal Rule of Civil Procedure 53, charged with recommending a plan for allocating

12  and distributing settlement funds among and for the benefit of members of the Private Indirect

13  Purchaser Settlement Class and the Governmental Purchaser Settlement Class.

14

15          In sum, Settling Plaintiffs seek an order: (i) granting preliminary approval of the proposed

16  Settlements; (ii) provisionally certifying the Private Indirect Purchaser Settlement Class and the

17  Governmental Purchaser Settlement Class; (iii) appointing a Rule 53 Special Master; and (iv)

18  approving a proposed allocation of the net Winbond Settlement funds between nongovernmental

19  indirect purchasers and governmental purchasers based upon the allocation in the Samsung

20  Settlement Agreement.

21  **II.     PROCEDURAL AND FACTUAL HISTORY**

22          **A.     Nature of Claims Being Settled.**

23          The Private Indirect Purchaser Settling Plaintiffs have alleged that the Settling Defendants

24  and other DRAM manufacturers participated in a horizontal conspiracy to fix prices and allocate

25  markets and customers for the sale of DRAM in the United States from April 1, 1999 through

26  December 31, 2002.  *See, e.g.,* Second Amended Complaint, *Petro Computer Sys., Inc. et. al. v.*

27  *Micron Technologies, Inc. et. al.,* No. 3:05-CV-02472 (N.D. Cal.) (hereinafter "*Petro* Complaint") at

28  ¶ 145.  The State Attorneys General alleged the same conspiratorial activities as to Samsung.  *See*

*e.g.,* Complaint, *State of California et. al. v. Samsung Electronics Co. et. al.*, Case No. CV 07-1347 PJH, at 4-6 (hereinafter "Plaintiff States' *Samsung* Complaint"). The complaint filed by the State Attorneys General against Winbond alleged conspiratorial acts in Singapore that affected certain products shipped into the United States. See e.g., Complaint, *State of California et. al. v. Winbond Electronics Co.*, Case No. C-07-2589-PJH. Each of the complaints allege violations of various federal and state antitrust and unfair competition laws, which injured indirect purchasers of DRAM throughout the United States during the conspiracy period. *See, e.g., Petro* Complaint at ¶¶ 144-145, 264, 272, 278-281, 288-309, 313-329. The complaints request injunctive relief, damages and restitution under state and federal antitrust law, and state unfair competition laws. *See, e.g., Petro* Complaint at ¶¶ 268, 286, 311, 337, 341. Plaintiff States' *Samsung* Complaint at ¶¶ 22-24, 43-44.

**B.    History of Settling Plaintiffs' Investigation, Discovery, and Settlement Discussions**

The complaints by Private Indirect Purchaser Class Plaintiffs were first filed in state courts beginning in 2002. Subsequently, beginning in 2005, private indirect purchaser cases were filed in federal court and some of the state court cases were removed. These cases were consolidated in this Court for pretrial purposes by the Judicial Panel on Multidistrict Litigation. The Private Indirect Purchaser Plaintiffs designated the complaint in *Petro* Complaint as the relevant complaint for purposes of coordinated pretrial proceedings in the MDL court. Although general discovery for the Private Indirect Purchaser Class Plaintiffs was stayed until July 24, 2005, due to the continuing investigation of the United States Department of Justice ("U.S. DOJ"), the Private Indirect Purchaser Class Plaintiffs obtained access to the millions of pages of documents defendants produced to U.S. DOJ and propounded limited interrogatories. ("Declaration of Josef D. Cooper in Support of Preliminary Approval of Class Action Settlements with Samsung and Winbond Defendants," filed concurrently with this motion, ("Cooper Decl.") at ¶¶ 3-4.)

Since that time, discovery has matured and defendants have produced over four million documents from both domestic and foreign entities. These documents, some of which had to be translated into English, were processed, reviewed, categorized and annotated by Counsel for the

1    Private Indirect Purchaser Class Plaintiffs using a web-based document management system that

2    allowed simultaneous access by counsel all over the United States.  Cooper Decl., at ¶¶ 3-5.  In

3    addition to the review of documents produced to the Grand Jury, Private Indirect Purchaser Class

4    Plaintiffs propounded discovery on defendants and third parties, reviewed and carefully analyzed the

5    discovery received consisting of thousands of pages of documents, and took the depositions of

6    approximately 100 witnesses from defendants and third-parties.  Cooper Decl. at ¶ 6.  Private

7    Indirect Purchaser Class Plaintiffs' counsel have also worked extensively with consultants and

8    economic experts in preparation for class certification and trial.  Cooper Decl., at ¶ 7.

9          The Plaintiff States began their investigation into this case in June 2005, serving investigative

10    subpoenas and interrogatories on defendants and third-parties pursuant to applicable state laws.

11    Defendants produced the same millions of pages of documents to the Plaintiff States that they had

12    previously produced to the Private Indirect Purchaser Class Plaintiffs and supplemented them with

13    additional documents and interrogatory responses.   Private Indirect Purchaser Class Plaintiffs

14    provided the Plaintiff States with access to their electronic document management system.[4]  Like the

15    Private Indirect Purchaser Class Plaintiffs, the Plaintiff States worked extensively with experts and

16    consultants in preparing their case.  *See* Varanini Decl. at ¶ 3.  Following an independent review of

17    documents, data, and interrogatory answers, the Plaintiff States, except New York, filed Case No.

18    06-4333 PJH in this Court.  The State of New York filed a separate action in the Southern District of

19    New York which was transferred to this court in Case No. 06-4636 PJH.  *See* Varanini Decl. at ¶ 2.

20    Neither of these Complaints named Winbond as a defendant.  Instead, a separate complaint was filed

21    against Winbond by certain of the Plaintiff States that alleged illegal conduct in Singapore.

22          Private Indirect Purchaser Class Plaintiffs began settlement negotiations with Samsung in the

23    Fall of 2005 (Cooper Decl. at ¶ 8), which Plaintiff States joined at the end of March, 2006.  *See,*

24

25

26    _____

27    [4]   There was some delay in the Plaintiff State's access because the documents were subject to the
Stipulation and Protective Order, but Plaintiff States were not parties to that Order.  Ultimately,
defendants issued waivers allowing the states access.  *See* "Declaration of Emilio E. Varanini in

28    Support of Preliminary Approval of Class Action Settlement with Samsung and Winbond
Defendants," filed contemporaneously with this motion, ("Varanini Decl.") at ¶ 3.

"Declaration of Blake L. Harrop in Support of Preliminary Approval of Class Action Settlements with Samsung and Winbond Defendants," filed concurrently with this motion, ("Harrop Decl." at ¶ 4). Although the Private Plaintiffs had engaged in preliminary settlement talks with Winbond, the discussions that led directly to the settlement began with Plaintiff States and Winbond in June of 2006 and were joined soon thereafter by the Private Indirect Purchaser Class Plaintiffs. Varanini Decl. at ¶ 5; Cooper Decl. at ¶ 11.

All negotiations were vigorous, at arms' length and non-collusive. After numerous face-to-face meetings and many telephone conferences and other communications, the Samsung Settlement was fully executed on February 5, 2007 and the Winbond Settlement was executed as of March 8, 2007. Varanini Decl. at ¶¶ 5-6.; Cooper Decl. at ¶ 9.[5] To facilitate the settlements, Plaintiff States filed the *Samsung* Complaint, Case No. CV 07-1347 PJH, on March 7, 2007, and the *Winbond* Complaint, Case No. C-07-2589 PJH on May 16, 2007.

## III.    SUMMARY OF SETTLEMENT TERMS

Settling Plaintiffs have entered into separate settlement agreements with Settling Defendants Samsung and Winbond. These settlements resolve all claims against Samsung and Winbond, which fall into discrete categories: (A) private nationwide class claims for non-governmental indirect purchases; (B) Plaintiff States' *parens patriae* claims for non-governmental indirect purchasers; (C) Plaintiff States' proprietary and *parens patriae* claims for direct and indirect purchases; and (D) residual class proprietary claims for direct and indirect purchases by political subdivisions and certain state agencies in the States of Alaska, California, Delaware, New Mexico, Ohio, Oklahoma and Pennsylvania.

### A.    The Samsung Settlement

Subject to Court approval, Samsung will pay $80,000,000 to settle the Private Indirect Purchaser Class Plaintiffs' claims on behalf of a nationwide class of nongovernmental indirect purchasers, which includes Plaintiff States' *parens patriae* claims for nongovernmental purchasers.

---

[5]    Despite the Settlements, Settling Defendants maintain that they have meritorious defenses to Settling Plaintiffs' claims. *See, e.g.,* Exh. A at 2; Exh. B at ¶ I(I).

1    Additionally, Samsung will pay $10,000,000 to settle the Plaintiff States' claims on behalf of

2    governmental entity direct and indirect purchasers, up to $2,500,000 toward the cost of notice,

3    $1,000,000 in attorneys' fees to State Attorneys General, and $19,500,000 in attorneys' fees to the

4    private class counsel, an amount negotiated subsequent to the execution of the Settlement Agreement

5    in a mediation conducted by retired District Court Judge Charles Legge.  Exh. A at ¶¶ 1-2, 20, 27

6    and Cooper Decl. at ¶ 10.

7         The Samsung Settlement also confers significant benefits beyond its monetary value.  First,

8    consistent with the "Judgment Credit Rule"[6], Samsung's sales remain in the case for purposes of

9    computing trebled damages against non-settling defendants.  *Id.* at ¶ 32.  Second, Samsung has

10   agreed to provide the Settling Plaintiffs with significant and valuable cooperation in their

11   prosecution of the case against the remaining defendants.  Samsung's obligations include furnishing

12   both documents and witnesses to Settling Plaintiffs.  *Id.* at ¶ 18.  Third, Samsung has agreed to

13   significant and ongoing injunctive relief not previously obtained by the U.S. DOJ in its criminal plea

14   agreements with DRAM manufacturers.  This relief will prevent future harm by requiring a three-

15   year prohibition against engaging in any horizontal conduct that is a *per se* violation of Section 1 of

16   the Sherman Act, and an agreement by Samsung to institute and maintain for three years a training

17   program to instruct its officers and employees regarding applicable antitrust and competition laws.

18   *Id.* at ¶ 13(b), (f).

19

20        The Samsung Settlement also imposes obligations designed to ensure total peace between

21   Samsung and all of the parties on whose behalf claims have been asserted in this litigation.  It

22   requires certification of a settlement class of nongovernmental Indirect Purchasers consisting of

23   "[a]ll natural persons and nongovernmental entities, who, at any time during the period from January

24   1, 1999 through December 31, 2002, purchased DRAM, including all products containing DRAM,

25

26   ───────────────

27   [6]   The Judgment Credit Rule provides that non-settling defendants receive only actual dollar credit
     for any settlements paid to the plaintiff(s) by their co-defendants.  *See, Texas Industries, Inc. v.
     Radcliff Materials, Inc.*, 451 U.S. 630 (1981); *Flinktote Company v. Lysfjord*, 246 F.2d 368, 397-

28   98 (9th Cir. 1957), *cert denied*, 355 U.S. 835 (1957); *William Inglis & Sons Baking Co. v.
     Continental Baking Co., Inc.*, 981 F.2d 1023, 1024 (9th Cir. 1992).

1  anywhere in the United States indirectly from [Samsung]." *Id.* at ¶¶ 1, 13(j).  It also requires

2  certification of a class of governmental purchasers "located in those States for which class

3  allegations are made in the complaint filed contemporaneously with [the Samsung Settlement] by

4  Plaintiff States," *Id.* at ¶¶ 2, 13(k).  (Full definitions of the proposed "Private Indirect Purchaser

5  Settlement Class" and the proposed "Government Purchaser Settlement Class" are set forth in full,

6  *infra*, at pp. 13-14, and in the proposed order granting preliminary approval of the Samsung

7  settlement).  Finally, it provides that all Settling Plaintiffs and the members of the Settlement Classes

8  relinquish any claims they have against Samsung based in whole or in part on matters alleged or that

9  might have been alleged in this litigation, excluding claims for product liability, warranty or breach

10  of contract.  *Id.* at ¶¶16-18.

11  **B.    The Winbond Settlement**

12

13  Winbond will pay $2,000,000 in settlement of all of the Settling Plaintiffs' claims. Exh. B, at

14  ¶¶ II(A)-(B), III(D)(1).  Unlike the Samsung Settlement, there are no separate provisions for

15  attorneys' fees or the payment of notice costs.  The Winbond Settlement provides for a non-

16  refundable deduction from the Settlement proceeds of Winbond's *pro rata* share of the class notice

17  costs (computed on the ratio of the payments made by the Settling Defendants). *Id.* at ¶ IV.C.  Any

18  attorneys' fees or other payments awarded by the court will also be deducted from the $2,000,000

19  payment.  The cooperation, injunctive, and "sales remain in the case" provisions of the Winbond

20  Settlement are substantially similar to their counterparts in the Samsung Settlement. *Id.*, at ¶¶ 3(A),

21  III(B) & (C), VIII(D).  The Winbond Settlement imposes the same obligations designed to ensure

22  total peace between the settling parties as the Samsung Settlement, including the same class

23  certification requirements and the same release language. *Id.* at ¶¶ II(C), IV(D), V(A)-(C).

24  In the Samsung Settlement, a division of Samsung's payments between the Private Indirect

25  Purchaser Settlement Class and the government purchasers was a term of the settlement, negotiated

26  at arm's length on the basis of publicly available data.  In contrast, the Winbond Settlement provides

27

28

1  for a single payment in satisfaction of all private and governmental claims.  Settling Plaintiffs[7]

2  therefore propose a division of the net Winbond settlement payment for the Court's approval in

3  accordance with the negotiated terms of the Samsung Settlement.  This would result of an allocation

4  of 89% of the funds to the Private Indirect Purchaser Settlement Class and 11% to government

5  purchasers, after deduction of court-awarded attorneys' fees, escrow fees and other costs.[8]

6  **IV.  PRELIMINARY APPROVAL OF THE SAMSUNG AND WINBOND
7       SETTLEMENTS IS IN THE BEST INTERESTS OF THE MEMBERS OF THE
       SETTLEMENT CLASSES**

8

9       **A.  Standard for Approval**

10          It is well established that there is an overriding public interest in settling litigation,

11  particularly complex multi-party litigation.  *See, e.g., Clement v. American Honda Finance Corp.*,

12  176 F.R.D. 15, 25 (D. Conn. 1997).  "It hardly seems necessary to point out that there is an

13  overriding public interest in settling and quieting litigation.  *Von Bronkizorst v. Safeco Corp.*, 529

14  F.2d 943, 950 (9th Cir. 1976); *see also Churchill Village L.L.C. v. General Elec.*, 361 F.3d 566, 576

15  (9th Cir. 2004).  Courts have particularly recognized that compromise is favored for antitrust

16  litigation --- which is notoriously difficult and unpredictable.  *See In re Shopping Carts Antitrust*

17  *Litigation*, 1984-1 Trade Case (CCH) ¶ 65,823 at 67, 443 (S.D.N.Y. 1983); *West Virginia v. Chas.*

18  *Pfizer & Co*, 314 F. Supp. 710 743-44) (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1019 (2d Cir.).

19          Courts generally apply a two-step approach to the settlement approval process in class and

20  *parens patriae* proceedings.  *In re Panasonic Consumer Electronics Products Antitrust Litigation*,

21  1989-1 Trade Cas. (CCH) ¶ 68,613 (S.D.N.Y. June 5, 1989).  In the first step, usually called

22  "preliminary approval," the court reviews the proposed settlement for obvious deficiencies.  The

23  grant of preliminary approval then triggers a notice and claim period during which the parties make

24

25  [7]   As used in this section of the Memorandum only, the term "Settling Plaintiffs" excludes the
26  State of New York insofar as its government entities are concerned because the State of New York
    has not settled with (nor sued) Winbond.  *See* Varanini Decl. at ¶ 6

27  [8]   However, it is not expected that the governmental purchasers will incur significant notice costs.
28  *See* Varanini Decl. at ¶ 10.  Therefore, Settling Plaintiffs agree that the notice costs should be
    deducted from that part of the Winbond settlement fund allocated to the Private Indirect Purchaser
    Settlement Class.

reasonable efforts to notify all potential beneficiaries of the settlement pursuant to a notice process approved by the court. *Id.* Preliminary approval is distinct from the second step in the process -- a fairness hearing and determination of "final approval."

Preliminary approval requires a court simply to find that the proposed settlement fits "within the *range* of possible approval" and should be given further consideration. *Armstrong v. Board of School Directors,* 616 F.2d 305, 314 (7th Cir. 1980) (emphasis added). Preliminary approval of a proposed class action settlement is appropriate "if the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys and appears to fall within the range of possible approval." *In re Vitamins Antitrust Litigation,* 1999-2 Trade Cas., (CCH) ¶ 72,726 at 86,356 (D.D.C. Nov. 23, 1999), (citing *Manual for Complex Litigation,* Third, §30.41 (West 1999)); *see also In re Shell Oil Refinery,* 155 F.R.D. 552, 555 (E.D. La. 1993). Preliminary approval is intended to "ascertain whether there is any reason to notify class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong,* 616 F.2d at 314; *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1988). In contrast, the purpose of the final approval fairness hearing is to determine whether the settlement is fair, reasonable and adequate after notice has been given to the class.

With the exception that certification of a class is not required, Plaintiff States do not require the application of a different standard by the Court in approving the settlement of their *parens patriae* claims. State Attorneys General of certain of the Plaintiff States have the *parens patriae* authority under state laws to represent natural persons resident in their States, to represent commercial entities (in some cases), and (in yet fewer cases) to represent local government entities. *See* Exh. C. Moreover, the authority of the State Attorneys General to bring *parens patriae* actions for injunctive relief has long been recognized by the U.S. Supreme Court. *See, e.g., Georgia v. Pennsylvania Railroad Co.,* 324 U.S. 439 (1945). Because of the comprehensive nature of both settlements, the Proposed Preliminary Approval Order asks the Court to give effect to the State Attorney General's determination to settle and release potential and actual federal and state *parens*

*patriae* claims pursuant to the terms of the Settlements if this Court should find the Settlements to be within the appropriate range for approval, and if the Court should certify the Settlement Classes. *See generally, In re Compact Disc Minimum Advertised Price Litigation*, 216 F.R.D. 197, 204, 206 (D. Me. 2003) (approving settlement of state and federal *parens patriae* antitrust claims brought by forty-three States as well as antitrust class claims as being fair, reasonable and adequate.)[9]

Settling Plaintiffs submit that there are no "obvious deficiencies" in these Settlements.  In light of the judgment of experienced class counsel and forty-seven (47) State Attorneys General, the injunctive and cooperation provisions, the $92,000,000 in cash payments, and the separate payment of attorneys' fees and notice costs in the Samsung Settlement, these Settlements are worthy of preliminary approval.

**B.    The Settlements Satisfy All of the Criteria for Preliminary Approval**

All of the relevant factors heavily favor approval of the proposed settlements:  In assessing whether a proposed settlement meets the standard for preliminary approval, the courts have identified the primary factors that should be considered: (1) whether the settlement is the result of arm's-length bargaining; (2) the terms of the settlement in relation to the strength of plaintiff's case; (3) whether sufficient discovery had been conducted at the time of settlement to evaluate the case; and 4) the opinion of experienced counsel. *In re Mid-Atlantic Toyota Antitrust Litig*, 564 F.Supp. 1379, 1383-1384 (D. Md. 1979).

---

[9]    In this case, as noted, the vast majority of Plaintiff States have asserted the authority to directly represent their State, their state agencies, and, in many cases, local government entities in bringing proprietary claims for direct and indirect purchasers of DRAM and DRAM-containing equipment made by said entities.  These "direct proprietary claims" (to be distinguished from "class proprietary claims" or "*parens* proprietary claims") are often treated differently in our federalist system.  *See, e.g., Moor v. County of Alameda*, 411 U.S. 699, 711-718 (1973); Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4, 9 (2005).  Settlement of these direct proprietary claims does not require court approval because these are not class claims; however, as a practical matter, this Court needs to provisionally certify the class of government entities to implement the Settlements because it is only by certification of this class can the claims of government entities be effectively aggregated and released in exchange for the value received. .  Also, ancillary tasks relating to these claims, such as the enforcement of various provisions of the Settlements, remain within this Court's purview.  *Compare, e.g., State of New York et. al. v. Hoffman-La Roche, Inc. et. al.*, No. Civ. 00-292 (D.D.C. Dec. 19, 2000), attached hereto as Exhibit D.

1.    **The Settlement Is the Result of Arms-Length Bargaining by Experienced Counsel, Who Believe Them To Be in the Best Interests of the Settlement Classes.**

The Settlements are the product of intense and thorough arm's length negotiations by experienced and informed counsel. The negotiations occurred over an extended period and involved numerous telephonic and face-to-face meetings. *See* Cooper Decl. at ¶¶ 9, 12; Harrop Decl. at ¶ 5; Varanini Decl. at ¶ 5. The process was contested and conducted in good faith. Settling Plaintiffs' counsel negotiated the Settlements based on their review and analysis of millions of pages of defendants' documents, the depositions of defendants' employees, their own substantial investigations and the analysis of expert consultants. Cooper Decl. at ¶ 12. Settling Plaintiffs' counsel's judgment that the Settlements are fair, reasonable and adequate is entitled to great weight. *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also, e.g., Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). Indeed, there is generally "an initial presumption of fairness when a proposed class settlement, which was negotiated at arms' length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions at 11.41 (4th ed 2002). *Accord, M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F.Supp. 819, 822 (D.Mass 1982). This Court should accord additional weight to this presumption here where forty-seven (47) State Attorneys General, who are charged with the sacred trust of protecting their States and the citizens residing therein, participated fully in the settlement negotiation process and executed the settlements in question. *In re Lorazepam & Clorazepate Antitrust Litigation*, 205 F.R.D. 369, 380 (D.D.C. 2002) (citing and discussing cases).

2.    **The Settlements Are Strong In Relation to the Cases**

Substantial discovery has been conducted into the claims of the indirect purchasers, and all counsel for the Settling Plaintiffs agree that the consideration for the Settlements is substantial. At over $110 million, including notice costs and attorneys' fees, the Samsung Settlement is one of the larger single defendant indirect purchaser settlements. The monetary benefit of the Winbond Settlement is quite substantial given Winbond's miniscule share of the market compared to

Samsung, and that the evidence indicates that its participation in the alleged conspiracy was far more limited. *See* Exh. 2 to Exh. B (Plaintiff States' *Winbond* Complaint); Harrob Decl. at ¶ 7.

In addition, the requirement that Samsung and Winbond cooperate fully in plaintiffs' prosecution of these cases against the non-settling defendants is a valuable benefit. As Settling Plaintiffs continue to litigate claims against Samsung's and Winbond's alleged co-conspirators, these settlement provisions will save time, reduce costs, and provide access to information and documents which plaintiffs might not otherwise have had. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp at 1386 (". . . the commitment [the] Distributor defendants have made to cooperate with plaintiffs will certainly benefit the classes, and is an appropriate factor for a court to consider in approving a settlement."). Furthermore, Settling Plaintiffs are obtaining injunctive relief against Samsung and Winbond that was not obtained by the U.S. DOJ in its criminal prosecutions, adding prospective value to the Settlements. *See, e.g., Compact Disc*, 216 F.R.D. at 208. Finally, the Settlements provide that the non-settling Defendants remain jointly and severally liable for all damages caused by the alleged conspiracy, including those from sales by the Settling Defendants. Therefore, although the proposed Settlements provide a significant and certain recovery, they do not reduce the total amount of damages recoverable at trial. *See In re Corrugated Container Antitrust Litig.*, 1981 WL 2093, *17 (S.D. Tex. June 4, 1981). Given the substantial size of the settlement payments, the total settlement benefits to be provided are fair, reasonable and adequate. *See, e.g., In re Vitamins Antitrust Litig.*, 2000 WL 1737867, *3 (D.D.C. 2000); *State of New York v. Reebok International Ltd.*, 903 F. Supp. 532, 536 (S.D.N.Y. 1995).

**V.    THIS COURT SHOULD PROVISIONALLY CERTIFY THE TWO SETTLEMENT CLASSES: ONE OF PRIVATE INDIRECT PURCHASERS AND THE OTHER OF GOVERNMENTAL PURCHASERS**

The Settlements are contingent upon the certification of Settlement Classes, and the Settling Plaintiffs request that this Court provisionally certify the two Settlement Classes defined in the Settlement Agreements. The first is a Settlement Class consisting of:

> All natural persons and nongovernmental entities, who, at any time during the period from January 1, 1999 through December 31, 2002, purchased dynamic random

> access memory devices and components ("DRAM"), including all products
> containing DRAM, anywhere in the United States indirectly from the defendants,
> their parents, subsidiaries and affiliates.

*See* Exh. A at ¶13(j); Exh. B at ¶ IV(D) (the "Private Indirect Purchaser Settlement Class").[10]

The second is the following Settlement Class:

> All state agencies and political subdivisions in the States of Delaware, Ohio, Oklahoma, and
> Pennsylvania, all political subdivisions in the States of Alaska, New Mexico, and California,
> and the California state agencies of the University of California and the State Bar of
> California, who, at any time from January 1, 1999 through December 31, 2002, purchased
> dynamic random access memory devices and components ("DRAM"), including all products
> containing DRAM, anywhere in the United States directly or indirectly from the defendants,
> their parents, subsidiaries, and affiliates.

*See* Exh. A at ¶¶ 2, 13(k); Exh. B, at ¶¶ II(C), IV(D) and Plaintiff States' *Samsung* Complaint at

¶¶98-99 (the "Government Purchaser Settlement Class"). This class is designed to ensure that the

Plaintiff States can effectively aggregate and release the claims of all of the government entities

whom they are representing in these Settlements.[11]

It is well-established that price-fixing actions like this one are appropriate for class

certification and many courts, including courts in the Northern District of California, have so held.

*See, e.g., In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005) ("*Rubber*

*Chemicals*"); *In re Citric Acid Antitrust Litig.*, No 95-1092,1996 WL 655791 (N.D. Cal. Oct 2,

1996) ("*Citric Acid*"); *In re Sorbates Direct Purchaser Antitrust Litig.*, Case No. C 98-4886 MMC,

2002 WL 31655191 (N.D. Cal.) (Order Granting Plaintiffs' Motion for Class Certification; Vacating

Hearing (Mar. 11, 2002) (Chesney, J.)) ("*Sorbates*"); *In re Sodium Gluconase Antitrust Litig.*,

Master File No. C 97-4142 CW (N.D. Cal.) (Order Granting Class Certification) (Sept. 24, 1998)

(Wilken, J.)) ("*Sodium Gluconate*"); *see also, e.g., In re Microsoft Corp. Antitrust Litig.*, No. 04-cv-

03705, MDL No. 1332, Order Certifying Settlement Class and Approving Settlement (D. Md. Feb.

---

[10]    Both Settlements exclude from this Private Indirect Purchaser Class: "Defendants, and their
parents, subsidiaries, and affiliates; all government entities; any judicial officer presiding over the
cases being settled; and all alleged co-conspirators." *See* Exh. A at ¶1; Exh. B at ¶ II(C).

[11]    Though the University of California and the State Bar of California are sufficiently
autonomous as a state law matter, *see, e.g.,* Cal. Const. Art. IX, §9(f), that they cannot be directly
represented by the California Attorney General, they can be represented by the California Attorney
General as part of a class action.

12, 2007), attached as Exhibit E (certifying similar government class of indirect purchasers of software); *In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143, 152-55 (E.D. Pa. 1979) (certifying government indirect purchaser class). This Court is obviously well aware of its own decisions to certify litigation and settlement classes for the direct purchaser claims in this litigation *E.g., In re DynamicRandom Access Memory Antitrust Litig.*, 2006 U.S. Dist. LEXIS 39841, (" *In re DRAM*").

Rule 23 provides for the certification of a class where plaintiffs satisfy the four prerequisites of Rule 23(a), and one of the three criteria set forth in Rule 23(b). The requirements of Rule 23(a) are:

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)    the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(3) provides that "an action may be maintained as a class action" if "[t]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." However, certification of a class for settlement purposes differs from certification in a litigation context in that the Court is not required to tackle question of "manageability" when the class's claims are being settled rather than tried. *See, Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); and *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 68 (D. Mass. 2005). *See also, Carnegie v. Household International, Inc.*, 376 P.3d 656, 660 (7th Cir. 2004) (citing *Amchem*, 521 U.S. at 620); and *In re Initial Public Offering Sec. Litig.*, 226 F.R.D. 186, 190, 195 (S.D.N.Y. 2005).

A.    **The Requirements of Rule 23(a) Are Satisfied In This Case**

1.    **Both Settlement Classes Are Sufficiently Numerous**

To satisfy the first requirement for maintaining a class action, that the class be so numerous that joinder of all members would be "impracticable," plaintiffs need not allege the precise number of class members. Fed. R. Civ. P. 23(a)(1). *See, e. g., Rubber Chemicals*, 232 F.R.D. at 350; *In re*

1   *Sugar Industry Antitrust Litig.*, 1976 WL 1374, at *12 (N.D. Cal. 1976). A finding of numerosity

2   may be supported by common sense assumptions. *Rubber Chemicals*, 232 F.R.D. at 350; *Citric*

3   *Acid*, 1996 WL 655791, at *3.

4        The Private Indirect Purchaser Settlement Class (individuals and entities who purchased

5   DRAM from 1999 through 2002) consists of tens of millions of members nationwide. *See* Cooper

6   Decl. at ¶ 12; Harrop Decl. at ¶ 9. This proposed class is more numerous than the classes of direct

7   purchasers previously certified by this Court. Similarly, the Government Purchaser Settlement Class

8   is comprised of thousands of governmental entities in seven States who directly and indirectly

9   purchased DRAM and products containing DRAM during the same period. *See* Varanini Decl. at ¶

10  10.

11              **2.    This Case Involves Questions of Law and Fact Common to the Class**

12

13       The second requirement of Rule 23 is that "there are questions of law or fact common to the

14  class." Fed. R. Civ. P. 23(a)(2). A court must assess if "the class is united by a common interest in

15  determining whether a defendant's course of conduct is in its broad outlines actionable." *Blackie v.*

16  *Barrack*, 524 F.2d 891, 902 (9th Cir. 1975). This requirement is easily met since it is satisfied by the

17  existence of a single common issue. *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 478 (W.D. Pa.

18  1999). Accordingly, "[c]ourts consistently have held that the very nature of a conspiracy antitrust

19  action compels a finding that common questions of law and fact exist." *Rubber Chemicals*, 232

20  F.R.D. at 351 (quoting *In re Sugar Industry*, 1976 WL 1374, at *13) (internal quotations omitted).

21       Here, there are numerous questions of law and fact that are common to all members of both

22  Settlement Classes, most of which are identical to the questions that this Court previously found

23  were common to the direct purchasers of DRAM: "The existence, scope, and efficacy of the

24  conspiracy to fix or stabilize prices of DRAM . . . are common questions that all plaintiffs must

25  address." *In re DRAM, supra,* at 24. Other common issues include: (1) the appropriate measure of

26  damages suffered by the Classes; (2) whether Defendants' conduct violates Sections 16720 and

27  17200 of the California Business and Professions Code; (3) whether Defendants' conduct violates

28

1   the antitrust, unfair competition, and consumer protection laws of the other states alleged in various

2   complaints; and (4) the appropriate nature of class-wide equitable relief.

### 3.   The Claims of the Representative Parties are Typical of the Claims of the Class.

5   The third requirement of Rule 23(a) is that "the claims or defenses of the representative

6   parties [be] typical of the claims or defenses of the class." "Typicality determines whether a

7   sufficient relationship exists between the injury to the named Plaintiff and the conduct affecting the

8   class, so that the court may properly attribute a collective nature to the challenged conduct." *Oregon*

9   *Laborers-Employers Health & Welfare trust Fund v. Phillip Morris, Inc.*, 188 F.R.D. 365, 373-74

10  (D. Ore. 1998) (internal quotations and citations omitted). "[R]epresentative claims are 'typical' if

11  they are reasonably co-extensive with those of absent class members; they need not be substantially

12  identical." *Hanlon*, 150 F.3d at 1020.

14  Courts have generally found the typicality requirement to be satisfied by the "elements [of] a

15  [price-fixing] conspiracy, its effectuation and resulting damages." *In re Chlorine & Caustic Soda*

16  *Antitrust Litig.* 116 F.R.D. 622, 626 (E.D. Pa. 1987); *see also Rubber Chemicals*, 232 F.R.D. at 351;

17  *Citric Acid,* 1996 WL 655791, at *3. As this Court held: "In cases involving an alleged price fixing

18  conspiracy, the representative plaintiff is usually considered typical even though the plaintiff

19  followed different purchasing procedures, purchased in different quantities or at different prices or

20  purchased a different mix of products than did the members of the class.* * * [T]here is substantial

21  legal authority holding in favor of a finding of typicality in price fixing conspiracy cases, even where

22  differences exist between plaintiffs and absent class members with respect to pricing, products

23  and/or methods of purchasing products." *In re DRAM, supra,* at 24. To prevail on their claims, all

24  plaintiffs and both proposed Settlement Classes alike would need to establish the existence, scope

25  and efficacy or impact of the alleged conspiracy. Thus, the typicality requirement of Rule 23(a)(3) is

26  satisfied.

**4.    The Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Classes**

The fourth requirement of Rule 23 mandates that the representative plaintiff fairly and adequately represent the class. Fed. R. Civ. P. 23(a)(4). The adequacy requirement consists of two separate inquiries. First, the representative plaintiffs must not possess interests that are antagonistic to the interests of the class. Second, plaintiffs must be represented by counsel of sufficient diligence and competence to fully litigate the case. *Hanlon*, 150 F.3d at 1020; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). The Representative Class Plaintiffs here meet both aspects of the adequacy test.

The Private Indirect Purchaser Plaintiffs were overcharged for DRAM and have a strong interest in establishing the Defendants' liability and recovering damages. The same is true for the Plaintiff States' Class Representatives and the Government Purchaser Settlement Class. (Indeed, the interests of Government Purchaser Settlement Class members are indistinguishable from the non-class government purchasers being represented by the Plaintiff States in their direct or *parens* capacity.) All Plaintiffs seek relief identical to that sought by every other member of the Settlement Classes. *See, e.g., Petro* Complaint at ¶¶ 137, 270, 276, 280, 310 and Plaintiff States' *Samsung* Complaint at ¶ 99. The Private Indirect Purchaser Plaintiffs' Co-Lead Counsel are nationally-recognized attorneys who have successfully prosecuted numerous antitrust class actions. These counsel are capable of, and committed to, vigorously prosecuting the Private Indirect Purchaser Settlement Class's claims, a fact amply demonstrated by the magnitude of the proposed Settlements. *See* Cooper Decl. at ¶ 4.

The same is true of the State Attorneys General, who are also highly capable of representing the Government Purchaser Settlement Class and their indirect purchasers as *parens patriae*. *See In Re Fine Paper Antitrust Litig.*, 82 F.R.D. at 150; *Antibiotic Antitrust Actions*, 333 F.Supp 267, 269 (S.D.N.Y. 1971) (court determined state party plaintiffs will fairly and adequately represent class of governmental entities); *In re Ampicillin Antitrust Litigation*, 55 F.R.D. 269, 274 (D.D.C. 1972)

1 (interests of statewide classes of governmental entities will be fairly and adequately protected by the

2 representative states, counties and cities); *see also, e.g.,* Varanini Decl. at ¶ 10.

3     **B.    The Proposed Settlement Classes Satisfy The Requirements Of Rule 23(b)(3)**

4     Once it is determined that the proposed class satisfies the requirements of Rule 23(a), a class

5 must be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to

6 the members of the class predominate over any questions affecting only individual members, and

7 that a class action is superior to other available methods for the fair and efficient adjudication of the

8 controversy." "Judicial economy and fairness are the focus of the predominance and superiority

9 requirements." *Oregon Laborers-Employers*, 188 F.R.D. at 375.

10     **1.    <u>Common Questions of Law and Fact Predominate Over</u>**
11             **<u>Individual Questions</u>**

12     As the United States Supreme Court has noted, the predominance test is "readily met" in

13 horizontal price-fixing antitrust cases. *Amchem Prods.*, 521 U.S. at 625; *see also In re Warfarin*

14 *Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3rd Cir. 2004). In determining whether common

15 questions predominate, "the focus of this court should be principally on issues of liability." *In re*

16 *Sugar Industry*, 1976 WL 1374, at *22; *Citric Acid*, 1996 WL 655791, at *6; *see also Local Joint*

17 *Executive Board of Culinary/Bartender Trust Fund v. Las Vegas*, 244 F.3d 1152, 1163 (9th Cir.

18 2000). Common questions need only predominate; they do not need to be dispositive of the

19 litigation as a whole. *Lorazepam*, 202 F.R.D. at 29; *In re Cardizem CD Antitrust Litig.*, 200 F.R.D.

20 326, 339 (E.D. Mich. 2001). The predominance standard is met "unless it is clear that individual

21 issues will overwhelm the common questions and render the class action valueless." *In re NASDAQ*

22 *Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996).

23

24     "The great weight of authority suggests that the dominant issues in cases like this are whether

25 the charged conspiracy existed and whether price-fixing occurred." *Rubber Chemicals*, 232 F.R.D.

26 at 353 (quoting *Citric Acid*, 1006 U.S. Dist. Lexis 16409, at *21), (internal quotation marks omitted).

27 Federal courts have also certified settlement classes of indirect purchaser government entities

28

1   bringing antitrust and/or unfair competition claims. *See, e.g., In re Fine Paper Antitrust Litig.*, 82

2   F.R.D. at 152-55.

3        Similarly, California state courts have certified nationwide classes for settlement purposes in

4   unfair competition actions where a nexus exists to California. *See, e.g., Wershba v. Apple*

5   *Computers, Inc.*, 91 Cal.App.4th 224, 241-42 (2001) (class action settlement based on California's

6   unfair competition and consumer legal remedies laws could include out-of-state class members

7   where nexus of conduct was in California); *Clothesrigger, Inc v. GTE Corp.*, 191 Cal.App.3d 605,

8   612-16 (1987); (class action settlement could involve nationwide class under California's laws). The

9   presence of a 50 state Cartwright Act claim in the *Petro* complaint, which is being settled as to

10  Samsung and Winbond, also raises common issues that support certification of the Private Indirect

11  Purchaser Settlement Class. Similarly, all but one of the Plaintiff States, who are part of the

12  Government Purchaser Settlement Class, are asserting a Cartwright Act cause of action for

13  government purchasers, which also supports certification of the Government Purchaser Settlement

14  Class. *See, e.g., In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001);

15  *Waste Management Holdings v. Mowbray*, 208 F.3d 288, 294-95 (1st Cir. 2000).[12]

16

17       The existence of potential individualized damage issues does not defeat the predominance of

18  common liability issues. See, e.g., *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 138

19  (citing and discussing cases). This Court has recognized that "classes were certified . . . regardless

20  whether some members of the class negotiated price individually, or whether – as here – differences

21  among product type, customer class, and method of purchase existed." *In re DRAM, supra*, 2006

22  LEXIS 39841. This is true even if there are individual state law issues, as long as the common

23  issues still outweigh the individual ones, e.g., as long as a common theory can be alleged as to

24

25  _____

26  [12]  New Mexico alone among the Government Purchaser Class does not have a claim under the
    Cartwright Act; the Plaintiff States do not anticipate individual issues involving New Mexico's
    antitrust law would arise that would overwhelm the common issues among the Class. *See In re New*
27  *Motor Vehicles Canadian Export Antitrust Litig.*, 235 F.R.D. 127, 135-136 (D. Me, 2006) (noting
    that, under New Mexico law, class certification of indirect purchasers class appropriate where
28  liability and impact could be proved under common theory applicable to consumers in several
    States).

liability and impact that can be pursued by the class.  *Cf, e.g.  In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 138 (citing and quoting with approval *Williams v. Sinclair*, 529 U.S. 1383, 1388 (9th Cir. 1975)); *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d at 294-295. Issues common to the Classes predominate in this case: all indirect purchasers paid overcharges that were caused by the defendants' price-fixing activities.  The presence of these common issues of liability and impact favors class certification of the Private Indirect Purchaser and Government Purchaser Settlement Classes, even if individual issues also exist as to affirmative defenses or as to damages.

### 2.    A Class Action Is Superior to Individual Litigation for the Fair and Efficient Adjudication of this Case.

The four considerations[13] enumerated in Rule 23(b)(3) for determining whether a class action "is superior to other available methods for the fair and efficient adjudication of the controversy" are subsumed under the same umbrella as the "manageability" inquiry which, as stated above, is not relevant to the certification of a settlement class since the intended outcome of the process is the termination, not further adjudication, of the claims.  *See Amchem*, 521 U.S. at 620.

### 3.    The Court Should Appoint Lead Counsel for the Settlement Classes.

Fed. R. Civ. P. 23(c)(1)(B) states that "[a]n order certifying a class action . . .  must appoint class counsel under Rule 23(g)."  Rule 23(g)(l)(C) slates that "[i]n appointing class counsel, the court (i) must consider:  [1] the work counsel has done in identifying or investigating potential claims in the action, [2] counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, [3] counsel's knowledge of the applicable law, [4] the resources counsel will commit to representing the class."

This Court has already appointed Cooper & Kirkham P.C., Gustafson Gluek PLLC, The Mogin Law Firm, P.C and Straus & Boies, LLP as Co-Lead Counsel for the Private Indirect

---

[13]  (1) The interest of members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by members of the class; (3) the desirability of concentrating the litigation of the claims in a particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Purchaser Plaintiffs. Each firm also meets the criteria of Rule 23(g)(1)(C)(i).[14] These counsel have shown that they are willing and able to vigorously prosecute this action and to devote all necessary resources to obtain the best possible result. They have been diligently and closely working with State Attorneys General in their *parens patriae* capacity, to ensure that indirect purchasers achieve the maximum possible benefit from these cases. *See, e.g.,* Cooper Decl. at ¶ 14; Varanini Decl. at ¶ 3. The work done to date supports the conclusion that Co-Lead Counsel should be appointed as Class Counsel for purposes of the Settlements. For the Government Purchaser Settlement Class, Plaintiff States suggest that the Plaintiff States of California, New Mexico, Ohio and Pennsylvania, be appointed Co-Lead Counsel for this class. Each State meets the criteria of Rule 23(g)(1)(C)(i).[15]

## VI.  THE COURT SHOULD BEGIN THE PROCESS OF DETERMINING THE ALLOCATION OF THE SETTLEMENT FUNDS BY APPOINTING A RULE 53 SPECIAL MASTER

The analysis of a proposed settlement distribution plan is distinct from the analysis of the fairness, reasonableness and adequacy of a settlement itself. *See, e.g., In re Vitamins,* 2000 WL 1737867 at **2-6. Accordingly, this Court can, and Settling Plaintiffs submit should, provisionally certify the Private Indirect Purchaser Settlement Class and the Government Purchaser Settlement Class, and give preliminary approval to the proposed Settlements without the necessity of first inquiring into the division of the settlement proceeds among the various groups within the classes (e.g., resellers and consumers, businesses and natural persons or citizens or governmental entities of various states). This is particularly true here, where the *Petro* Complaint alleges that a sufficient nexus exists between the alleged conspiracy and the State of California to provide indirect DRAM purchasers in all 50 States with a cause of action under the Cartwright Act.[16] As discussed above, there is sufficient commonality of factual and legal issues affecting all members of the proposed

---

[14]  *See, e.g., Harrington v. City of Albuquerque,* 222 F.R.D. 505, 520 (D.N.M. 2004).

[15]  This appointment would be for procedural reasons only. Because there is no difference between government entities being represented in a class capacity for purposes of bringing a proprietary claim on their behalf and government entities being represented in a direct capacity for purposes of bringing a proprietary claim on their behalf, Plaintiff States would not need to, in any respect, change the governing structure submitted to, and approved by, this Court in Case No. 06-4333 PJH.

[16]  *See, e.g., Wershba.,* 91 Cal.App.4th at 241-42; *Clothesrigger,* 191 Cal.App.3d at 612-16.

1    settlement classes to satisfy Rule 23, and the distinctions that arise from settlement class members'

2    places in the chain of distribution or status as commercial entities as opposed to natural person are

3    relevant only to distributing the settlement proceeds.  As such, they are analogous to individual

4    damage issues in a litigation class context.  *See, e.g., In re Visa Check/MasterMoney Antitrust Litig.*,

5    280 F.3d at 138.

6        A formula for allocating proceeds in an antitrust class settlement need only have a reasonable

7    rational basis to be approved by the Court, particularly if recommended by experienced counsel.  *In*

8    *re Visa Check/Mastermoney Antitrust Litig.*, 297 F.Supp.2d 503, 518-519 (E.D.N.Y. 2003), *aff'd*,

9    396 F.3d 96 (2d Cir. 2005).  In cases of this complexity and magnitude, however, in addition to

10   relying on counsel, courts have successfully employed a procedure that utilizes the services of a

11   Special Master to assist them in arriving at a fair and and reasonable allocation of settlement

12   proceeds.  *See, e.g., In re Holocaust Victim Assets Litigation*, 105 F. Supp.2d 139, 149-50 (E.D.N.Y

13   2000), *aff'd* 424 F.3d 132 (2nd Cir. 2005).  Settling Plaintiffs believe that such a procedure should

14   be adopted here.  Accordingly, in addition to requesting preliminary approval of the Settlements and

15   the provisional certification of the Settlement Classes, the Settling Plaintiffs have also moved the

16   Court, pursuant to Rule 53 of the Federal Rules of Civil Procedure, for an order referring to a Special

17   Master, the issues of the division and distribution of settlement proceeds to members of the Private

18   Indirect Purchaser Settlement Class and members of the Governmental Purchaser Settlement Class.

19

20       Settling Plaintiffs further submit that the dissemination of Class Notices should be deferred

21   until the Special Master has an opportunity to submit a report and recommendation to the Court on

22   plans of distribution for the classes.  The outline of the plans can then be included in the Class

23   Notices and the plans can be given final approval in conjunction with the determination of final

24   approval of the Settlements.  This procedure was utilized recently in *Sullivan v. DB Investments*, No.

25   3:04-cv-2819 (D.N.J. Dec. 2, 2005), attached as Exhibit F.  Like this case, *Sullivan* involved the

26   allocation of an antitrust overcharge among class members who purchased at different levels along

27   the chain of distribution.  The *Sullivan* procedure differed from that selected by the court in

28   *Holocaust Victim Assets* in that in *Holocaust Victim Assets*, notice was disseminated and the

1    settlement was given final approval before the Special Master began his work.  Counsel for the

2    Settling Plaintiffs here, some of whom are also class counsel in *Sullivan* (*see* Cooper Decl. at ¶ 15),

3    submit that the *Sullivan* procedure is preferable since it provides putative settlement class members

4    with a greater ability to predict the nature and amount of any recovery before they are called upon to

5    decide to remain in or exclude themselves from the settlement classes.  The Special Master in

6    *Sullivan* was given the discretion to conduct proceedings as he determined necessary, including

7    requesting briefing and the submission of evidence and expert opinions, from counsel for the settling

8    plaintiffs in order to prepare recommendations on a plan for allocating the settlement proceeds

9    among members of the settlement class.[17]  *See,* Exh. F (*Sullivan*).

10

11           The Settling Defendants and the Settling Plaintiffs have agreed in principal that the

12   appointment of a Special Master is the most efficient method of arriving at a plan for the fair and

13   reasonable allocation of the settlement proceeds among the members of the Settlement Classes.  The

14   parties will meet and endeavor to present the Court with one or more agreed-upon candidates for

15   appointment as the Special Master prior to the hearing on this motion for preliminary approval.  If

16   the parties are unable to reach agreement, each side will submit a separate list of three candidates for

17   the Court's consideration.

18   **VII.    FUTURE SUBMISSIONS**

19           Once a Government Purchaser Plan of Allocation is prepared by the Plaintiff States, and the

20   Special Master has made recommendations for allocation plans for the Settlement Classes, the

21   Settling Plaintiffs will submit for the Court's approval forms of Class Notice, a proposed plan for the

22

23   [17]    The Settling Plaintiffs respectfully submit that where, as here, the process of determining a fair
     and adequate allocation of the settlement proceeds among settlement class members will be

24   conducted while active litigation proceeds simultaneously against the non-settling defendants, it
     may be appropriate to ensure that the work of the Special Master, and the submissions of counsel to

25   the Special Master, can proceed without concern that there might be an unintended effect on
     litigation issues.  *Cf.* Adv. Comm. Notes to Federal Rule of Civil Procedure 53(f) (West. 2007)

26   (noting the existence of circumstances that may justify denying public access or even the access of
     parties to reports); Adv. Comm. Notes to Federal Rule of Evidence 408 (West 2007) [1974

27   Enactment] (purpose of rule makes "evidence of the settlement of a claim or disputed claim
     inadmissible when offered as evidence of liability or the amount of liability inadmissible.  The

28   purpose of this rule is to encourage settlements which would be discouraged if such evidence were
     admissible.").

1   dissemination of Notice and opt-out procedures all in accordance with Federal Rule of Civil

2   Procedure Rule 23 (c)(2)(B)[18].  At the same time, the Settling Plaintiffs will submit proposed dates

3   for a fairness hearing.

4   **VIII.    SETTLING PLAINTIFFS REQUEST THAT THIS COURT APPROVE THE**

5   **          PROPOSED DIVISION OF THE WINBOND SETTLEMENT FUNDS**

6           As noted, a formula for allocating proceeds in a settlement need only have a rational basis,

7   particularly if approved by experienced counsel.  Moreover, this Court need not decide all issues

8   involving allocation at the same time, but may decide some initially while reserving others for a later

9   date.  *Compare Compact Disc*, 216 F.R.D. at 208-209.  Accordingly, for the reasons explained

10  above, Settling Plaintiffs request that after payment of attorneys' fees, escrow fees, taxes and other

11  costs, 89% of the Winbond Settlement fund, be allocated to the Private Indirect Purchaser Settlement

12  Class and 11% be allocated to government purchasers (both the Government Purchaser Settlement

13  Class and the government purchasers with direct or *parens* claims).  *See, e.g.*, Harrop Decl. at ¶ 8

14  (noting that the Samsung Settlement allocation of $80 million for Private Indirect Purchasers and

15  $10 million for government purchasers was arrived at pursuant to contested negotiations and after

16  consideration of publicly-available data concerning state and local government entities' purchases of

17  DRAM-containing products).

18  **IX.     CONCLUSION**

19          For the foregoing reasons, Settling Plaintiffs respectfully submit that the Court should: (1)

20  grant preliminary approval of the Settlements, including the proposed division of the Winbond

21  settlement funds; (2) conditionally certify the Settlement Classes; (3) appoint a Rule 53 Special

22  Master to aid in crafting Plans of Allocation for the Settlement Classes and (4) defer consideration of

23  the forms of Settlement Notice and plan(s) and schedule(s) for the dissemination of Notice until the

24  work of the Special Master is completed.

25

26

27  ――――――――――――――

    [18]    As provided in the Settlement Agreements, certain non-class representative Plaintiff States

28  intend to notify their State agencies and/or political subdivisions and give them a chance to exclude
    themselves from the settlement. *See, e.g.*, ORS 646.775.

Dated: October 10, 2007                    Respectfully Submitted,


_____/S/ Josef D. Cooper_____
By: Josef D. Cooper
On Behalf of All Private Indirect Purchaser
Class Plaintiffs

DANIEL GUSTAFSON
GUSTAFSON GLUEK, PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Telephone: (612)333-8844

DANIEL J. MOGIN (Ca. S. B. 95624)
THE MOGIN LAW FIRM
110 Juniper Street
San Diego, CA 92101
Telephone: (619) 687-6611

DAVID BOIES III
STRAUS & BOIES, LLP
4041 University Drive, 5th Floor
Fairfax, VA 22030
Telephone: (703) 764-8700

JOSEF D. COOPER
COOPER & KIRKHAM, P.C.
655 Montgomery Street, 17th Floor
San Francisco, CA 94111
Telephone: (415) 788-3030


Co-Lead Counsel for Indirect Plaintiffs


FRANCIS O. SCARPULLA (Ca. S.B. 41059)
ZELLE, HOFFMAN, VOEBEL, MASON &
GETTE, LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700

Liaison Counsel for Indirect Plaintiffs

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TERRY GROSS (Ca. S. B. 103878)
GROSS & BELSKY, LLP
180 Montgomery Street, Suite 2200
San Francisco, CA 94104
Telephone: (415) 544-0200

Chair, Indirect Plaintiffs' Executive Committee


_____/s/ Emilio E. Varanini_____
By: Emilio E. Varanini
On Behalf of All Plaintiff States and All
Governmental Purchaser Class Plaintiffs

EDMUND G. BROWN, JR.
THOMAS GREENE
KATHLEEN FOOTE
EMILIO E. VARANINI
Office of the Attorney General
455 Golden Gate Avenue, Ste. 11000
San Francisco, CA 94102
Telephone: (415) 703-5908

BLAKE L. HARROP
Senior Assistant Attorney General
State of Illinois
100 W. Randolph
Chicago, IL 60601
Telephone: (312) 814-1004