Blake L. Harrop
Senior Assistant Attorney General
Office of the Attorney General of Illinois
James R. Thompson Center
100 W. Randolph Street, 13th Floor
Chicago, Illinois 60601
**Co-Lead Counsel and Attorneys
for the State of Illinois**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION | Master File No. M-02-1486-PJH<br><br>MDL No. 1486<br><br>**DECLARATION OF BLAKE L. HARROP IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH SAMSUNG AND WINBOND DEFENDANTS** |
| This Document Relates To:<br><br>ALL INDIRECT PURCHASER ACTIONS<br><br>*State of New York v. Micron Technology et al*, No. C-06-6436 PJH<br><br>*State of California et al v. Infineon Technologies AG et al*, No. C-06-4333 PJH<br><br>*State of California et al v. Samsung Electronics Co., Ltd et al*, No. C-07-1347 PJH | |

I, Blake L. Harrop, declare:

1.  I am a Senior Assistant Attorney General for the Illinois Attorney General's Office and am one of the lead counsel in the cases of *State of California et. al. v. Infineon Technologies et.*

Harrop Declaration in Support of Preliminary Approval                                    -1-

*al.*, Case No. 06-4333 PJH, *State of California et. al. v. Winbond Electronics Co.*, Case No. 07-2589 PJH, and *State of California et. al. v. Samsung Electronics Co.*, Case No. 07-1347 PJH, all of which are in this Court. I am admitted *pro hac vice* and could, if called as a witness, testify competently to the matters set forth herein.

2. I have played a lead role in collecting and reviewing documents and data obtained by the Plaintiff States in the course of their investigation prior to the filing of the above-mentioned lawsuits. These documents and data were obtained from defendants in the above-entitled actions as well as from third party Original Equipment Manufacturers ("OEMs"). OEMs purchase memory modules and chips from the defendants in the above actions (hereinafter referred to as "dynamic random access memory" or "DRAM") and insert them into their electronic products for sale to distributors and end-users. Since the Plaintiff States filed the above-listed cases, they have continued to receive and review documents and data from the defendants and third parties.

3. As part of this investigation, I have been responsible for collecting and reviewing these documents and data. I have also taken the lead, on behalf of the Plaintiff States, in working with experts and consultants during this investigation and after the filing of the above-mentioned cases.

4. I was one of the lead counsel also assigned to settlement negotiations on behalf of the Plaintiff States. Accordingly, I joined settlement negotiations already under way between the Indirect Purchaser Plaintiffs and Samsung Electronics Co. (hereinafter "Samsung") at the end of March of 2006. While I was one of the lead counsel for settlement negotiations with Samsung on behalf of Plaintiff States, Deputy Attorney General Emilio E. Varanini of the California Attorney General's Office was entrusted with leading the settlement negotiations with Winbond Electronics Co. (hereinafter "Winbond") for the Plaintiff States. Moreover, once an agreement-in-principle was reached between Plaintiff States and Samsung, Deputy Attorney General Varanini was responsible for finalizing details and coordinating the execution of the Samsung settlement.

5. The settlement negotiations with Samsung occurred over an extended period of time and included numerous telephonic and face-to-face meetings.

6. Based on my experience as Senior Assistant Attorney General in charge of antitrust matters for the state of Illinois and having participated in other multistate actions, such as the forty-two (42) State Attorneys General indirect purchaser action in *In re Compact Disc Minimum Advertised Price Litigation*, 216 F.R.D. 197 (D. Me. 2003), the Samsung and Winbond settlements are fair and reasonable.

7. At over $93 million, including attorney's fees and notice costs, the Samsung settlement is a substantial indirect purchaser settlement. Moreover, the evidence of Winbond's participation in the conspiracy alleged in the above cases is confined to a localized agreement in Singapore to fix prices on DRAM purchased by hard drive manufacturers who then placed that DRAM into hard drives exported to the United States. Moreover, Winbond's market share during the relevant time period is de minimus. Given this evidence, the Winbond settlement is also substantial.

8. The total Samsung settlement amount of $10 million for government purchasers was negotiated as a percentage of the $80 private indirect purchaser claim. It was arrived at after contested negotiations and consideration of publicly-available data concerning state agencies' and local government entities' purchases of DRAM. Because of this, I am comfortable recommending a similar split for Winbond settlement funds with 11% of those funds (after deducting notice costs, attorneys' fees, and other expenses such as taxes) being allocated to government purchasers.

9. The proposed class of Indirect Purchasers in the preliminary approval motion is comprised of individuals and entities nationwide, including those being represented by Plaintiff States in their *parens patriae* capacity, who indirectly purchased DRAM from defendants in the above-listed cases. This would include such items as computers, servers, printers, disk drives, and networking equipment. Based on my work in this case to date, I believe that there are tens of millions of members of this class located nationwide.

Harrop Declaration in Support of Preliminary Approval                                                      -3-

10. I also play a leading role for the Plaintiff States in working on government purchaser claims. I am acquainted with the direct or *parens patriae* proprietary claims filed by most Plaintiff States on behalf of state agencies and (in many cases) local government entities. I am also acquainted with the class proprietary claims filed by a handful of Plaintiff States, such as Pennsylvania, on behalf of state agencies and local government entities.

11. I am the lead attorney for the Plaintiff States in working with experts to implement a planned survey of state and local government entities located in the Plaintiff States that will be used to prove damages in the *Infineon* case and to devise a plan for the apportionment of government purchaser settlement funds from the Samsung and Winbond settlements. In my opinion, there is no principled basis for treating the residual class of government purchasers any differently than government purchasers being represented directly or in a *parens* capacity by the Plaintiff States. Consequently, Plaintiff States are proceeding with this survey of all state agencies and local government entities that they represent on the basis that no appreciable difference exists among these entities based on how Plaintiff States choose to represent them.

I declare under penalty of perjury under the laws of the United States and the State of Illinois that the foregoing is true and correct.

_/s/ Blake L. Harrop_
Blake L. Harrop